# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **KIMBERLY RENE BAKER,** ) | |
| ) | |
| Plaintiff, ) | Case No. 1:11CV00040 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Joseph E. Wolfe, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, and Wolodymyr Cybriwsky, Law Office of Wolodymyr Cybriwsky, Prestonsburg, Kentucky, for Plaintiff. Eric P. Kressman, Regional Chief Counsel, Region III, M. Jared Littman, Assistant Regional Counsel, and Robert W. Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Kimberly Rene Baker filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act ("Act"), 42

U.S.C.A. §§ 401-433, 1381-1383d (West 2003 & Supp. 2011). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Baker filed for benefits on March 19, 2008, alleging that she became disabled on July 15, 2006. Her claim was denied initially and upon reconsideration. Baker received a hearing before an administrative law judge ("ALJ"), during which Baker, represented by counsel, and a vocational expert testified. The ALJ denied Baker's claim, and the Social Security Administration Appeals Council denied her Request for Reconsideration. Baker then filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, which have been briefed and orally argued. The case is ripe for decision.

II

Baker was born on April 23, 1979, making her a younger person under the regulations. 20 C.F.R. § 404.1563(c) (2010). Baker has a high school education[1] and has worked in the past as a licensed practical nurse, furniture refinisher, truck driver, and fast food worker. She originally claimed she was disabled due to severe pain in her right arm.

---

[1] Baker also completed two years of vocational school.

On July 15, 2006, Baker fell on her right arm while working as a licensed practical nurse. She reported to Buchanan General Emergency Room, where X rays of the right elbow revealed fractures of the olecranon process and the radial head, as well as avulsion of the right triceps tendon from its insertion at the olecranon process. Baker was placed in a splint and directed to report to an orthopedic clinic for further treatment.

On July 18, 2006, Baker sought treatment from Shital Parikh, M.D.. Dr. Parikh recommended surgery to repair Baker's triceps tendon tear and conservative treatment for the fractures. Dr. Parikh surgically repaired Baker's triceps tendon on July 24, 2006.

After surgery, Baker continued to have stiffness, burning, and aching pain in her right elbow. In September 2006, Dr. Parikh performed further manipulation of her right elbow. In October 2006, Dr. Parikh recommended that Baker go back to work in two to three weeks since she had regained at least 100 degree range of motion of her elbow.

In November 2006, a CT scan of the right elbow revealed postsurgical changes in the posterior olecranon process related to the prior triceps tendon repair, as well as probable posttraumatic changes of the medial epicondyle near the common flexor tendon insertion. There were no acute radial head fractures. Dr. Parikh recommended an MRI evaluation of the right elbow.

In December 2006, an MRI report from the University of Virginia Health System indicated that Baker's lateral ulnar collateral ligament was extremely thin with mild posterior subluxation of the radiocapitellar joint.

In December 2006, Baker sought treatment for complaints of burning pain in the posteromedial aspect of her right elbow. Dr. Parikh stated that Baker's flexion had improved considerably but that she still lacked full extension. Dr. Parikh stated that there were no distal neurovascular deficits and suggested that she obtain a second opinion from another orthopedic surgeon regarding further course of treatment.

In February 2007, Baker sought a second opinion from Scott A. Riley, M.D., of Commonwealth Orthopaedic Surgeons. Dr. Riley noted that Baker had limited range of motion in her right elbow and forearm, but full range of motion in her wrist and fingers. He referred Baker to Glen A. McClung II, M.D., and recommended electrodiagnostic testing to rule out ulnar nerve impingement. In April 2007, Dr. McClung reported that Baker's nerve conduction and electrodiagnostic testing were normal. Baker had no nerve root entrapment or neuropathy.

On May 11, 2007, Dr. McClung performed a right elbow radial head replacement with an open capsular release. Follow-up radiographs showed excellent placement of the radial head prosthesis.

In June 2007, Baker began rehabilitative treatment at Merritt Physical Therapy. Although Baker reported no range of motion improvement and continued to complain of pain throughout her therapy, objective testing showed much improvement in her range of motion. Baker was discharged from physical therapy in October 2007.

Seven months after the operation, in December 2007, Dr. McClung reported that Baker had range of motion from 20 to 110 degrees in her right elbow. However, because Baker continued to have unexplainable pain, Dr. McClung referred her to Ronald C. Burgess, M.D.. Dr. Burgess reported no abnormalities and opined that Baker was at maximum medical improvement. Dr. Burgess also questioned Baker's credibility, stating that her true level of pain was probably somewhat less than she professed.

In January 2008, Leslie D. Hall, OTR/L, CHT, of Kentucky Hand & Physical Therapy, conducted a functional capacity evaluation. Ms. Hall reported minor inconsistencies in Baker's subjective reports of pain. She concluded that Baker was unable to safely return to her job as a licensed practical nurse. However, Ms. Hall suggested that Baker could perform a range of work that did not require strong grasping, overhead or repetitive forward reaching, or loaded pronation/supination.

Baker sought treatment from J.P. Sutherland, Jr., M.D., from February 2008 to March 2010. During this time period, Baker complained of weakness, numbness, and tingling in her right arm and hand. Dr. Sutherland noted passive and active decreased range of motion of the right elbow, as well as increasing fixation of the right elbow due to trauma of the radial head. Dr. Sutherland diagnosed Baker with chronic pain syndrome, peripheral neuropathy of the right hand and arm, ulnar collateral ligament damage, and ulnar nerve impingement in the right elbow. He prescribed Lortab, Lyrica, Zanaflex, Voltaren, Cymbalta, and Robaxin.

Robert McGuffin, M.D., a state agency physician, reviewed Baker's medical records in June 2008. He opined that Baker was capable of performing a range of light work. On October 21, 2008, Donald Williams, M.D., a state agency physician, also reviewed the medical records and found that Baker could perform a range of light work.

In October 2008, E. Hugh Tenison, Ph.D., a state agency psychologist, reviewed Baker's medical records and determined that she did not have a medically determinable mental impairment. Dr. Tenison noted that Baker had no mental health provider and that she could perform routine activities such as laundry, light cleaning, preparing simple foods, driving, shopping for clothes and

food, and attending her child's basketball games. He stated that Baker's mental allegations were not credible.

In August 2009, Brad Adkins, Ph. D., conducted a psychological evaluation at the request of Baker's attorney. Baker complained of frequent crying spells, difficulty sleeping, problems with concentration, and panic attacks. Dr. Adkins diagnosed Baker with depression, panic disorder, and pain disorder. He assigned a GAF score of 46.[2] Dr. Adkins noted that Baker had no history of mental health treatment. He stated that, with treatment, it would be reasonable to expect remediation of Baker's anxiety and depression symptoms.

In September 2009, Baker sought treatment from Dr. McClung for complaints of right elbow pain. Dr. McClung noted that Baker lacked 25 degrees of full extension and 15 degrees of full supination in her right elbow. He recommended an elbow arthroscopy, which was performed on October 28, 2009.

In November 2009, Baker underwent a residual capacity assessment. Dr. Sutherland indicated that Baker could occasionally lift or carry less than ten pounds, sit or stand less than three hours in an eight-hour workday, and had limited reaching, handling, fingering, and feeling abilities. In March 2010, Dr. Sutherland

---

[2] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in social, occupational, or school functioning. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

completed a second residual capacity assessment. He opined that Baker had a poor prognosis and was unable to perform any of her past work activity.

In January 2010, Baker returned to Dr. McClung for a follow-up visit. Dr. McClung stated that Baker lacked 25 degrees of full extension, but that the clicking and popping in her right elbow had stopped following the arthroscopy procedure. He opined that Baker had reached her maximum level of medical improvement. In March 2010, Dr. McClung indicated that Baker could not return to her prior work, but that she could do other work activities with restrictions.

At the administrative hearing held in March 2010, Baker testified on her own behalf. Baker confirmed that she was able to make sandwiches, do the laundry, clean, drive, pay the bills, and shop. Donald Anderson, a vocational expert, also testified. He classified Baker's past work as a licensed practical nurse, a furniture refinisher, and a truck driver as medium to heavy, semi-skilled; and her past work as a fast food worker as light to medium, unskilled.

In August 2010, after the administrative hearing, Nasreen R. Dar, M.D., conducted a psychiatric evaluation at the request of Baker's attorney. Dr. Dar diagnosed Baker with neurotic depression and generalized anxiety disorder. Dr. Dar noted that Baker had average intellect, intact memory, and no delusional thinking, but opined that Baker could not handle gainful employment because of her inability to tolerate stress.

-8-

Case 1:11-cv-00040-JPJ-PMS   Document 20   Filed 02/16/12   Page 8 of 17   Pageid#: 656

After reviewing all of Baker's records and taking into consideration the testimony at the hearing, the ALJ determined that she had severe impairments of chronic pain syndrome status post triceps tendon repair and right elbow radial head replacement, trauma, and obesity, but that none of these conditions, either alone or in combination, met or medically equaled a listed impairment.

Taking into account Baker's limitations, the ALJ determined that Baker retained the residual functional capacity to perform a range of light work that involved frequent kneeling and stooping, and occasional reaching, crouching, crawling, and climbing stairs. However, the ALJ stated that Baker could not climb ladders, work at heights, or work around hazardous machinery or vibrating surfaces. She was limited to jobs that did not require her to repetitively reach forward or have a strong grasp with her right upper extremity or hand. The vocational expert testified that someone with Baker's residual functional capacity could work as a counter clerk, an usher, or a ticket seller.[3] The vocational expert testified that those positions existed in significant numbers in the national economy. Relying on this testimony, the ALJ concluded that Baker was able to

---

[3] At oral argument, Baker's counsel claimed that the counter clerk position does not exist in the Dictionary of Occupational Titles as described by the vocational expert. This argument was not raised in the plaintiff's brief. Nevertheless, the argument is irrelevant, since the vocational expert listed two other job positions suitable for someone with Baker's residual functional capacity. Baker argues that the two other positions — an usher or a ticket seller — require the use of both hands. However, I disagree with this assertion, which is nowhere supported in the record.

perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

Baker argues the ALJ's decision is not supported by substantial evidence because the ALJ improperly rejected the medical opinions of Baker's treating physicians, failed to give proper weight to Baker's mental restrictions set forth by Dr. Adkins, and improperly discounted Baker's credibility. For the reasons below, I disagree.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing DIB and SSI claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4)

could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2011). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Baker argues that the ALJ's decision is not supported by substantial evidence. She presents three arguments.

First, Baker argues that the ALJ improperly substituted her own medical opinions for the opinions of Baker's long-term treating physicians. Specifically, Baker asserts that the ALJ failed to give proper weight to the opinions of Baker's family physician, Dr. Sutherland, and Baker's orthopedic surgeon, Dr. McClung.

A treating physician's medical opinion will be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). However, the ALJ has "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). When deciding the weight given to a treating physician's opinion, the ALJ considers factors such as the length and nature of the treating relationship. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

In the present case, the ALJ considered the opinions of Dr. Sutherland but gave little weight to his assessment for several reasons. First, Dr. Sutherland's treating relationship with Baker was limited — he did not perform any objective tests but simply recorded Baker's complaints and prescribed her pain medication. Second, Dr. Sutherland's opinions are inconsistent with the objective medical

evidence of record. Dr. Sutherland opined that Baker was unable to perform work-related activities full time, yet Dr. Parikh indicated that Baker could return to light-duty work in October 2006. (R. at 275, 277.) In addition, Dr. Sutherland's opinions are inconsistent with the normal nerve conduction and EMG results, as well as Dr. McClung's conclusions that Baker had full flexion of 130 degrees, lacked only 25 degrees of full extension, and had reached maximum medical improvement by January 2010. (R. at 302-05, 452.)

With respect to Dr. McClung, there is nothing in the record to indicate that the ALJ ignored or improperly discounted his treatment records. The ALJ accounted for Baker's right arm and elbow pain in her residual functional capacity assessment, effectively limiting her to light work. Although the ALJ did not list every detail about Baker's treatment from Dr. McClung, she did discuss the surgical procedures and treatment conducted by this provider. The ALJ is not required to recite the entire medical record in detail. Baker had an opportunity at the administrative hearing to develop the record as it relates to her allegations, and the ALJ properly considered this testimony as well as all of the objective medical evidence in making her decision.

Second, Baker contends that the ALJ failed to give proper weight to Baker's mental restrictions set forth in the medical report of Dr. Adkins from August 2009. I find this argument unpersuasive. As discussed by the ALJ, Baker never sought

-13-

Case 1:11-cv-00040-JPJ-PMS   Document 20   Filed 02/16/12   Page 13 of 17   Pageid#: 661

specialized mental health treatment and was never referred to any mental health counseling or prescribed medication to treat depression or anxiety.[4] The only formal evaluation Baker sought was Dr. Adkins' one-time, attorney-referred consultative opinion. In the case of a consultative source, the ALJ has even wider discretion, since only a treating source's opinion is entitled to controlling weight. 20 C.F.R. §§ 404.1527(d), 416.927(d) (2011).

Furthermore, Dr. Adkins' opinion was not properly explained or supported by his own objective findings. Dr. Adkins indicated that Baker had intact memory, followed directions well, was friendly and polite, and had no history of mental health treatment or suicidal ideations. Dr. Adkins also noted that it was not unreasonable to expect a fair amount of improvement of Baker's anxiety and depression symptoms with treatment. (R. at 466.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Accordingly, I find that substantial evidence supports the ALJ's weighing of the psychological evidence.

Lastly, Baker argues that the ALJ improperly discounted her credibility when evaluating her claims of chronic pain. This argument is without merit. The ALJ's assessment is consistent with the record, which shows that the medical

---

[4] Baker was prescribed Cymbalta by her primary care provider. However, this was for complaints of chronic pain and neuralgia in the right upper extremity, not specifically for symptoms resulting from a mental impairment.

-14-

evidence was inconsistent with Baker's self-reported pain. Several of Baker's treating sources noted improvement in Baker's functional use of her right arm following surgical treatment. (R. at 346, 354, 358, 401, 452.) In fact, after four months of physical therapy, Dr. Parikh instructed Baker to return to light-duty work because she had regained at least 100-degree range of motion. (R. at 275, 277.) Baker's daily living activities, such as doing laundry, fixing her own meals, driving, and shopping, further contradict her claims of chronic pain. *See, e.g., Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005). Moreover, there are notes from Dr. Burgess suggesting that Baker's pain allegations were overstated. (R. at 405-06.) Given this evidence, as well as the "great weight" afforded credibility determinations by the ALJ, *see Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984), I agree with the ALJ's assessment as to Baker's credibility.

As an additional matter, at oral argument, Baker was given leave to file a motion to remand based on alleged newly discovered evidence. Under 42 U.S.C.A. § 405(g), the court may order additional evidence to be taken before the Commissioner of Social Security, but only if the new evidence is material and there is good cause for failing to incorporate the evidence in the record in a prior proceeding. Evidence "must be material to the extent that the Secretary's decision 'might reasonably have been different' had the new evidence been before her."

*Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

After consideration of the supplementary medical evidence provided by plaintiff's counsel, I find that Baker's Motion for Remand must be denied.[5] Lee Besen, M.D., opined that Baker's right arm injury equals a listed impairment. However, since an extreme loss of function in only one arm is not sufficient to meet any listing, Dr. Besen's conclusion is legally flawed. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02B (2011). Furthermore, Dr. Besen's opinion that Baker's alleged depression equals a listed impairment is unexplained and contradicted by other evidence of record. Accordingly, I find Baker's new medical evidence to be immaterial.

IV

For the foregoing reasons, the plaintiff's Motion for Remand and Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

---

[5] The Motion for Remand has been responded to by the Commissioner. The Motion for Remand was filed one day late, but under the circumstances, I will consider it on the merits.

DATED: February 16, 2012

/s/  James P. Jones
United States District Judge